IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD BAUER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 106 |
| v. ) | |
| ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting ) | Maria Valdez |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Donald Bauer's ("Plaintiff") claims for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 23] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is granted.

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. Procedural History

Plaintiff filed his applications for DIB and SSI in June 2011, alleging disability beginning in August 2007 due to chronic neck and back pain, which radiated into his extremities, and headaches. (R. 321–36, 374.) His applications were denied initially and again upon reconsideration. (R. 107–10.) After an Administrative Law Judge ("ALJ") issued an unfavorable decision, the Appeals Council ("AC") remanded the case for further analysis of Plaintiff's treating physician, among other things. (R. 111–34.) Plaintiff presented for a second hearing before an ALJ on March 25, 2015, represented by counsel. (R. 39–73.) A vocational expert and medical expert also offered testimony. (*Id.*) On July 31, 2015, the ALJ issued a partially favorable decision finding Plaintiff disabled from August 5, 2007 through February 16, 2012, but not thereafter. (R. 11–38.) The AC denied review on November 3, 2016, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); (R. 1–7.)

## II. ALJ Decision

On July 31, 2015, the ALJ issued a partially favorable written determination finding Plaintiff was disabled between August 7, 2005 and February 16, 2012. (R. 11–38.) At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since August 5, 2007, the date he became disabled and

met the insured status requirements of the Act through December 31, 2007. (R. 19.) At step two, the ALJ found that from August 5, 2007 through February 16, 2012, Plaintiff suffered from the severe impairment of degenerative disc disease of the lumbar spine, status post fusion surgery. (*Id.*) At step three, the ALJ determined that for the period from August 5, 2007 through February 16, 2012, Plaintiff's degenerative disc disease met or medical equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926); (R. 20.) Based on these determinations, the ALJ determined Plaintiff was disabled from August 5, 2007 through February 16, 2012. (R. 21.)

Next, the ALJ noted that Plaintiff had no developed any new impairments since February 17, 2012, and that beginning that date, Plaintiff did not have in impairment of combination of impairments which disease meet or medical equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926); (*Id.*) Thus, the ALJ determined that medical improvement occurred as of February 17, 2012, the date Plaintiff's disability ended. (*Id.*)

Before step four, the ALJ found that, beginning February 17, 2012, Plaintiff had the residual functional capacity ("RFC") to perform work at a sedentary exertional level, subject to several limitations.[2] At step four, the ALJ concluded that

---

[2] At this stage, the ALJ determined Plaintiff:
> can occasionally climb ramps and stairs but never ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. However, [Plaintiff] cannot tolerate any exposure to or work around hazards such as

3

Plaintiff was not capable of performing his past relevant work. (R. 31.) Then, beginning in February 17, 2012, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as a document preparer, information clerk, and order clerk. (R. 31–32.) Because of this determination, the ALJ found that Plaintiff's disability ended February 17, 2012. (R. 32.)

## **DISCUSSION**

### III.   **ALJ Standard**

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

---

       moving machinery or unprotected heights. He cannot tolerate work around or exposure to vibration.
(R. 21–22.)

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer to any remaining question precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## IV. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

5

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning. . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

We review the ALJ's decision but we play an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

**V.    Analysis**

Plaintiff argues that the ALJ's decision should result in remand because she: (1) improperly evaluated the medical opinion evidence; (2) erred in calculating his

6

RFC; and (3) the Appeals Council failed to consider new and material evidence. For the reasons that follow, the Court disagrees.

**A. Dr. Khan's Medical Opinion**

First, Plaintiff contends the ALJ failed to properly discount the opinion of his treating physician Dr. Aftab Khan, M.D. who opined on November 3, 2014 that Plaintiff could, in relevant part, carry no more than five pounds for a minimal amount of time, could stand for twenty minutes total in an eight-hour workday, five minutes at a time, could walk for a similar amount of time, could sit for twenty minutes at time for a total of four hours, had to lie down periodically, needed a cane, could never reach, handle, finger, feel, push, pull, or operate foot controls, or perform postural activities. (R. 696–701.) On other occasions, Dr. Khan opined that Plaintiff was disabled. (R. 526, 581.)

To start, Plaintiff argues that Dr. Khan's opinion deserved to be accorded controlling weight. The "treating physician rule" directs the ALJ to give controlling weight to a claimant's treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence. *See* 20 C.F.R. § 404.1527(d)(2). The question upon review is not *could* the ALJ have accorded controlling weight to the physician, but rather, did the ALJ provided substantial evidence supporting her decision not to.

Here, the ALJ explained that Dr. Khan's opinion was not entitled to controlling weight because it was not supported by the treatment records. (R. 28–30.) The ALJ pointed out, for example, that other records indicated Plaintiff had no

7

sensory or motor loss in his upper or low extremities that would diminish his ability to lift five pounds. (R. 28.) She also noted that Plaintiff rarely reported difficulty walking, and only occasionally used a cane, in addition to exhibiting normal gait and station. (*Id.*) She also noted that despite Plaintiff's continued complaints over a period of years, his medication remained unchanged. (R. 27.) Several of Dr. Khan's examination notes demonstrated normal or unremarkable findings with respect to motor strength, strength and tone, and lower and upper body extremities. (R. 27–28.) Thus, the ALJ concluded, Dr. Khan's opinion was not entitled to controlling weight because it was inconsistent with other evidence. The Court finds that this discussion is substantial enough for it to trace a path between the evidence of record and the ALJ's decision not to accord Dr. Khan's opinion controlling weight.

But, even if Dr. Khan was not accorded controlling weight, Plaintiff still argues that his opinion would be entitled to good weight using the factors in 20 C.F.R. § 404.1527. Generally, even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. §

8

404.1527(c). The ALJ must then provide a "sound explanation" for that decision. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Plaintiff does not argue necessarily that the ALJ erred in applying the factors. Rather, he simply points to evidence from Dr. Khan's opinions which he believes met the criteria and would entitle his opinion to greater weight. This is simply not the Court's standard of review. Neither Plaintiff, nor this Court, may reweigh the evidence.

Furthermore, even if the Court were to accept Plaintiff's argument, the ALJ did evaluate Dr. Khan's opinion under the regulatory guidance. The ALJ noted that Dr. Khan was not a specialist, but that he did have a lengthy relationship with Plaintiff, and that Plaintiff had reported to Dr. Khan with some regularity over a course of years. (R. 18, 28.) In fact, the ALJ detail several of Dr. Khan's appointments with Plaintiff, including the doctor's findings and his course of treatment. (R. 26–28.) She then compared Dr. Kahn's treatment notes to later notes in the record which demonstrated improvement in Plaintiff's condition. (R. 30.) Finally, the ALJ noted that the opinions articulated by Dr. Khan (that Plaintiff could stand a total of twenty minutes in an eight-hour work day, sit for twenty minutes at a time for a total of four hours, could never handle, finger, feel, push, pull, or operate foot controls, etc.) were not supported by any other medical evidence from Dr. Khan himself, or otherwise. (R. 28.) This discussion provides the discussion contemplated by the regulatory factors. As a result, the Court finds that the ALJ did not error when she assigned no weight to the opinion of Dr. Khan.

Plaintiff additionally argues that the ALJ's decision should be remanded because the ALJ misstated that the record contained no evidence dated after February 16, 2012 which demonstrated neurological deficits. Specifically, Plaintiff claims this statement is the result of the ALJ handpicking evidence favorable to her disability determination, while disregarding other critical evidence. Plaintiff then points to several records which indicate low back pain, lower leg pain, limited range of motion in the spine, positive straight leg testing, and gait abnormalities after February 16, 2012. (*Pl.'s Br.* at 13.) Despite her statement to the contrary, the ALJ listed much of the evidence Plaintiff complains about, including visits in 2013 to Dr. Khan where Plaintiff had "painful range of motion", "limping" and "wore a back brace." (R. 26.) The ALJ continues on to detail Plaintiff's treatment in 2014 noting Plaintiff's range of motion continued to be limited by pain and that straight leg testing was positive. (R. 26–28.) The ALJ then contrasted this to other evidence demonstrating normal neurological examinations, gait assessments, and motor strength examinations. (*Id.*) Thus, contrary to Plaintiff's argument, the ALJ did not cherry pick the evidence, but fully discussed the evidence of record.

**B. RFC Determination**

Next, Plaintiff contends that the ALJ erred when she limited him to sedentary work with occasional stooping, kneeling, crouching, crawling and climbing, in light of his documented back pain. In particular, Plaintiff argues that a "common sense" review of the evidence would reveal that he is unable to perform these tasks.

A claimant's RFC is the most he can still do despite his limitations. *See* 20 C.F.R. § 404.1545(a)(1). When formulating a claimant's RFC, an ALJ must incorporate all of a claimant's limitations which she finds are supported by the record, *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014), "even those that are non-severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("[w]hen determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."). The RFC assessment must always consider and address medical source opinions. SSR 98-6p.

At the administrative hearing, the ALJ elicited testimony from Dr. Ashok Jilhewar, M.D. After review of Plaintiff's record, and listening to his testimony, Dr. Jilhewar expressed that Plaintiff retained the ability to work at a sedentary capacity, would be unable to work with ladders, ropes, or scaffolds, but could do all other activities at an "occasional" level. (R. 61.) He also opined that Plaintiff would be unable to work at unprotected heights and needed to avoid exposure to vibrations and work around large moving machinery. (R. 62.) The ALJ subsequently accorded great weight to Dr. Jilhewar's opinion and adopted his findings when formulating her RFC. (R. 21.) Thus, the ALJ's RFC determination was supported by the medical expert.

Plaintiff claims a "common sense" reading of the evidence would clearly demonstrate that he cannot kneel, crouch, or stoop for two hours during the workday, particularly in light of his lumbar fusion back pain with radiculopathy. But the court in the cases cited by Plaintiff did not remand on "common sense" alone. For example, in *Barnett v. Barnhart*, the Court found the ALJ improperly erred at step three because he made his own assumption instead of consulting a medical expert as to whether the claimant met a listing. 381 F.3d 664, 670–71 (7th Cir. 2004). The Court merely noted in the conclusion following it analysis that "[c]ommon sense cause[d it] to question the validity of a finding that a woman suffering multiple seizures in a single day could be employed as a cashier." *Id.* at 671. But, this is not a legal standard that all subsequent courts must adopt. Because the ALJ's RFC determination was otherwise supported by Dr. Jilhewar's opinion, the Court finds the ALJ made no error.

**C. New and Material Evidence**

Lastly, Plaintiff argues that the AC failed to include new and material evidence in his administrative record which would affect the outcome of the ALJ's decision.

The AC, in determining whether to review a claim that has been denied by an ALJ, must evaluate additional evidence that the claimant submits, provided that the evidence is both "new" and "material" and relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b); *Farrell v. Astrue*, 692 F.3d 767, 770–771 (7th Cir. 2012). The Council will then grant de novo review of the ALJ's

decision only "if it determines based on the supplemented record that the ALJ's conclusions are contrary to the weight of the evidence." *Stepp v. Colvin*, 795 F.3d 711, 721 (7th Cir. 2015). Evidence is considered "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Stepp v. Astrue*, 795 F.3d at 725 (quoting *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)). Evidence is considered "material" if it "creates a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Id.* The additional evidence must also relate to the period on or before the date of the ALJ's decision. *Schmidt v. Barnhart*, 395 F.3d 737, 742 (2005).

Plaintiff first claims that the AC mistakenly omitted from the record a letter from Dr. Khan dated June 23, 2016, in violation 42 U.S.C. § 405(g). *See* 42 U.S.C. § 405(g) (noting that "in any case in which the Commissioner has not made a decision fully favorable to the individual," the Commissioner shall file "a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.")

To start, the Court notes that Commissioner filed a supplemental copy of the administrative record on August 2, 2017 which included Dr. Khan's June 23, 2016 letter, thereby, comporting with the requirements of § 405(g). Thus, Plaintiff's argument in this respect is mooted. Furthermore, to the extent Plaintiff argues that Dr. Khan's letter was new and material evidence, Plaintiff presents no facts or analysis in furtherance of his proposition, effectively waiving his argument. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("perfunctory and

13

undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues))"; *see also Handford ex rel. I.H. v. Colvin*, No. 12 C 9173, 2014 U.S. Dist. LEXIS 3449, at *39 (N.D. Ill. 2014) (applying Berkowitz to reject underdeveloped arguments in a Social Security appeal). But, assuming that Plaintiff had made a colorable argument, the letter would not be deemed material. Here, the ALJ had already considered several other pieces evidence from Dr. Khan declaring that Plaintiff was disabled, including another letter dated February 2013 and a form from November 2014. The June 23, 2016 letter therefore is cumulative of evidence already in the record.

Plaintiff puts forth a similar argument under this standard with regard to cervical spine MRIs dated October 23, 2015, which he alleges support his complaint of headaches. Dr. Khan's 2016 letter explains that the MRI findings were consistent with Plaintiff's complaints of pain. (R. 716.) Plaintiff asserts this evidence would change the outcome of his disability determination because "the [VE] testified if he were off task just 16% of the day due to headaches he would be unemployable." *Pl.'s Br.* at 20.

The AC's letter makes clear that it considered Plaintiff's MRI's, but still determined that any evidence dated after July 31, 2015 would not affect the ALJ's decision about whether Plaintiff was disabled beginning on or before July 31, 2015. (R. 2–6.) While this new MRI evidence may substantiate some of Plaintiff's complaints of pain and headaches, there is no evidence that these complaints would

14

result in Plaintiff being off-task more than 15% of the workday.[3] Therefore the Court likewise deems the MRI's as not material, and finds that the Appeals Council made no error in its consideration of the evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 23] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is granted. Affirmed.

**SO ORDERED.**                     **ENTERED:**

**DATE:     June 29, 2018**         _____
                                    **HON. MARIA VALDEZ**
                                    **United States Magistrate Judge**

---

[3] The Court notes that the VE testified that an individual who would be off task for more than 15% of the day for any reason would be unemployable. (R. 72.)